Opinion op the Court,
be Judge Mills.
George Stockton located for Samuel Harrison, two tracts of land on the waters of Licking, and afterwards, as a comPerisation, Harrison gave his bond to Stockton, conditioned to convey to Stockton, by “a good and sufficient deed, four hundred acres of land, on the waters of Licking creek, in the then county of Fayette, when obtain®cl from government.” This bond was executed in 1785. Some time afterwards, Stockton agreed to sell to Baker, the present defendant in error, two hundred acres °f land, part of one of the tracts on the waters of which he, Stockton, had located for Harrison, and the parties to this sale applied to Harrison to give bond to Baker for this two hundred acres; but Harrison refused to do so. Baker, however, settled down upon the tract which Stockton had sold him. Afterwarc^s’ ^ was f°und necessary to use Stockton as a witness) to establish either the special calls of Harrison’s entry, out of which Stockton had sold to Baker, on a cbafr of entries depended, or of which it was part, in which many persons were interested; and in order to extinguish Stockton’s interest for this purpose, ¡t was agreed that Stockton should assign the bond he held on Harrison, to Gabriel Evans & Co. the persons interested; that Baker should surrender to “ ' Stockton, the bond which he held on him, and that Evans & Co. should give their bond to Baker to secure him the two hundred acres which he held, which was done accordingly. Evans & Co. afterwards assigned the bond of Harrison to Stockton, to William P. Fleming, who filed his bill thereon against Harrison’s devisees, to compel them to convey the tract out of which Stockton had first sold to Baker, and that suit was brought to this court by two appeals, as will appear by the reported cases. See 2 Bibb, 171; 4 Bibb, 525.
All these ultimately eventuated in the conveyance to Fleming of four hundred acres, part of the tract of land in Fleming county, on which Baker resides, now the *251 subject of controversy, leaving of the same tract, about or upwards of one hundred acres. Harrison’s devisees had first brought an ejectment against Baker and others on the land, claiming under Stockton, and had obtained a judgment, which was enjoined by Fleming in the aforesaid suit in chancery. The demise in the declaration expired, and a new ejectment was brought and prosecuted to judgment. This last judgment Balter enjoined by this bill stating that his farm and most of his improvements, were left to the Harrisons, after Fleming’s part was assigned, and that Fleming, in case of his success, was bound to him to convey two hundred acres; but Fleming having failed to obtain his farm, he demanded payment for his improvements.
The court below empannelled a jury, who found the value of the improvements made during the occupancy of Baker, and also, the rents commenced at the service of the first ejectment upon Baker; and the former exceeding the latter, the court gave a decree for the balance against Harrison’s devisees, to reverse which, they have prosecuted this writ of error.
This is a case where no other claim is concerned, and the improvements made by the defendant in error, were made under, and subject to the claim of Harrison, and the inquiry is, has the defendant made these improvements upon the land, supposing that it was his own, or had he any encouragement from Harrison to enter and do the labor ?
The defendant has not even the advantage of a posi-> tive bond from Stockton, with ignorance as to the kind of contract existing between Stockton and Harrison; for it appears he was acquainted with the nature of Stockton’s contract, and that there was an application by both to Harrison, to give his own bond, and he refused. According to the terms of this contract between Harrison and Stockton, his case must be tried. It is clear, that the bond held by Stockton, did not, in terms, apply to this tract, more than to any other tract upon the waters of Licking, and it has been heretofore decided by this court, and that decision comports with the dictates of common sense, that Harrison could discharge this bond by four hnndred acres out of either tract, and was entitled to the election out of which it should be taken. Baker, therefore, could form no greater hope of retaining the land in question, than what was based *252 on the possible contingency, that Harrison would conyey ouf 0f the tract in question, and that Harrison might also convey the spot of his residence, as there was more in the tract than was necessary to fill Stockton’s bond, -and the event has proved, that the additional contingency of Harrison having lost most of the other tract, has fixed the bond to this one; and that even placing the bond on this, it has left out Baker’s residence. Wé have said there was a possible contingency, that the bond of Stockton might embrace Baker’s settlement, and it was possible only; for the refusal of Harrison to give his bond for this land, rendered it highly improbable. Baker being warned of this before he settled, must be supposed to have made his improvements, running the risk of those contingencies, and ought not to be allowed to charge Harrison’s representatives with these improvements, from the face of the writings themsel\\es, and Baker’s knowledge of them before he settled.
The only circumstance which, Baker relies upon, as entitling him to his improvements, is, the assent of Harrison that Baker should settle and improve on this tract. ' The bill relies upon the following proof to show that Harrison did thus consent: Baker applied to the court of common law, to appoint commissioners under the occupying claimant laws, and they were appointed and made their assessment, and reported accordingly. The devisees of Harrison, opposed the report, on the ground that Baker claimed under the same title, and was not entitled to the benefit of the act of 1812, which was then in force. To try this question, the parties, by their counsel, made an agreed and written statement of the facts, some agreed and some proved, and submitted it to the court, who decided against Baker in the court of law, according to the decision of this court in the case of Lewis’devisees vs. Singleton’s heirs, 2 Marsh. 214. In that statement, appears the following: “And it was further proved by Major George Stockton,” (who is since dead,) “that Baker, and Williamson under him, settled upon the land they have improved, with the express consent and approbation of Samuel Harrison, deceased, and that under faith of the purchase aforesaid.” This statement is set up in this bill, as showing that the entry of Baker was with the consent of Harrison, by alleging that “it was in that .contest proved, in open *253 court, and admitted by the devisees of Harrison, as will be found by a written submission signed by counsel on both sides, that Baker settled upon the land which he ■improved, with the express consent and approbation of Samuel Harrison, deceased, and under faith .of the purchase.”
If it be conceded that .this testimony of Stockton, taken in that controversy at law, which was decided against Baker, could be admitted in this case as evidence, because of Stockton’s death, and because Baker now claims in this controversy, what he then claimed in the suit at law, (which is not clear, as the parties to that controversy were different somewhat from this, and the points not entirely the same, although the claim is the same,) still, we apprehend that Baker cannot succeed upon the strength of the evidence; for he has greatly weakened its force by his own bill. He does not swear positively, nor charge that -this is the fact. On the contrary, he expressly states, that after he had bargained with Stockton, he and Stockton called upon Harrison, and applied to him to give his bond to convey Baker’s share out of the tract in question, and that Harrison refused, alleging that he would not give two bonds, as Stockton held his bond already for the four hundred acres, and agreed that he would give Stockton four hundred acres out of his lands in Kentucky; that he then informed Harrison, that he had agreed to buy the land from Stockton, for the purpose of removing from Maryland to this country, to settle upon the land. He then charges, that “ he understood Harrison distinctly to assent ^to the same, by observing, that he, Baker, was a good looking man, and if he did not settle on the said tract of land himself he was in hopes that he, Baker, would make one of his (Harrison’s) sons a good neighbor.” Now it is evident, that the fair construction of .this interview with Harrison, as stated by Baker himself, will not make it speak an express consent, but the contrary. Harrison refused to locate the land to this spot; but admitted his obligation to give four hundred acres out of lands in Kentucky, a plain intimation that .he would not confine his bond to a particular spot; but Stockton, or Baker under him, must run thp risk and abide by Harrison’s subsequent election. The forego? ing expressions of Harrison, detailed by Baker, cannot ¡help the case. If they were jocular, they implied a de? *254 nial; if serious, they apply to a possible future event, jn case Harrison did not settle the tract himself, but place one of his sons there, Baker might prove a good neighbor. But they are words too light to infer therefrom, a consent to Baker’s settlement, except at his own risk, and still less a solemn obligation to pay for the improvements which Baker might make. Take, then, the consent of Harrison, as stated by Baker, it does not help his case. Take it as recited in the agreed case at law, to have been proved by Stockton, it is much stronger. But in choosing between the two, as his bill is verified by affidavit, we are constrained to take his own, and conceive that the statement in the agreed case, is made up by counsel, who meant to settle facts and leave the law to the court, without prejudicing the future rights of the parties, as Harrison’s devisees contend in their answer, and that Baker’s own evidence has corrected the statement, and shows that he has no further rights to his improvements than the original contracts gave him. This we have seen was contingent and uncertain, and that Baker himself run the risk of improving under such circumstánces, and that he is not such an innocent possessor, or one so deluded by the assurances of Harrison, as entitles him to recover the value of his labor.
The decree must, therefore, be reversed with costs, and the cause be remanded, with directions to dismiss the bill with costs.