## Tuck et al. v. Sharer et al.

(Decided May 2, 1930.)

W. S. HOLMES for appellants.

BRATCHER & MOORE for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellees, the heirs at law of M. J. Sharer, deceased, brought this action on September 23, 1926, against R. E. Tuck and Kate Tuck, his wife, who are the appellants, and J. A. Stewart and others, referred to in the record as the Stewart heirs, to recover a tract of land containing about 88 acres then held and claimed by the appellant R. E. Tuck. The petition averred that by virtue of an agreed judgment entered in the Butler circuit court in 1911 in a suit in which M. J. Sharer was the plaintiff and R. E. Tuck was the defendant, and also by reason of a written memorandum on the margin of a deed which the Stewart heirs had executed to R. E. Tuck, M. J. Sharer was at the time of his death the rightful owner of the land, and that plaintiffs as his heirs were entitled to recover it. The plaintiffs asked that the defendants be required to convey the land to them. The Stewart heirs filed an answer in which they averred that they had conveyed the land to R. E. Tuck and disclaimed any interest in it.

R. E. Tuck married Vera Sharer, the daughter of M. J. Sharer. She died in 1908 leaving one child, the appellee, Hattie Tuck, then about three years of age. Prior to Vera Tuck's death her husband, R. E. Tuck, had purchased the land in question from the Stewart heirs, and they had executed and delivered to him a deed. The consideration was $800. Of this sum he borrowed $450 from his father-in-law, M. J. Sharer, to secure the payment of which he executed and delivered to Sharer a mortgage on the land. The deed executed by the Stewart heirs was never recorded. In 1910 M. J. Sharer brought suit in the Butler circuit court to foreclose the mortgage. In February, 1911, the following agreed judgment was entered in the case: ''This cause having been submitted upon the pleadings, exhibits, and the proof and the deed

from J. A. Stewart and others to Elwood Tuck, and it appearing that said deed had never been accepted and put to record, and the plaintiff agreeing to surrender all his claims and cancel all his notes and accounts mentioned herein, and pay the cost of the suit, and to the defendant $115, in consideration that the defendant R. E. Tuck surrender said deed to the plaintiff and have J. A. Stewart and others reconvey the land mentioned herein to the plaintiff. And this being the agreement of the parties it is made the judgment of the Court, and the plaintiff is given a writ for the possession of the land herein mentioned, and the Clerk may issue said writ if demanded by the plaintiff, directing the Sheriff of the County to put the plaintiff in possession of said land and all appurtenances, and this cause is dismissed settled.'' This judgment was approved by the attorneys of record of Sharer and Tuck and their approval indorsed on the judgment. The unrecorded deed from the Stewart heirs to R. E. Tuck was delivered to Sharer, and indorsed on the margin thereof was the following: ''M. J. Sharer having paid me for land herein, the Stewart heirs are requested to convey the land to him. 3/1/1911. R. E. Tuck.'' At the time this transaction occurred, a deed from the Stewart heirs to M. J. Sharer was prepared, but this deed was never acknowledged by the Stewart heirs. It appears that when it was presented to them they claimed that they had parted with all title to the land when they executed the deed to Tuck and they refused to execute another deed. The deed from the Stewart heirs to Tuck with the indorsement thereon signed by Tuck and the unexecuted deed from the Stewart heirs to M. J. Sharer were delivered to Sharer and were found among his papers after his death.

In their answer appellants admitted the foregoing facts, except they denied that R. E. Tuck made the indorsement on the deed from the Stewart heirs to him. They then alleged in their answer that, when the Stewart heirs refused to convey the land to Sharer, another contract was entered into between R. E. Tuck and M. J. Sharer by the terms of which M. J. Sharer was to have the use of the farm for five years and all the cut timber then on the land and certain standing timber to satisfy his debt of $450; that Tuck returned to Sharer $115 paid to him under the first agreement, and that pursuant to the second agreement Sharer returned the land to Tuck on the 23d day of February, 1917. The reply traversed

these allegations of the answer and alleged that Tuck took possession of the land in February, 1917, under an agreement with M. J. Sharer whereby he was to support his daughter, Hattie Tuck, until she was twenty-one years of age, and that Sharer was then to resume possession of the land. M. J. Sharer died in October, 1925, and Hattie Tuck arrived at the age of twenty-one in January, 1926.

Upon the submission of the case the appellees were adjudged the rightful owners of the land, and a special commissioner was appointed and directed to execute a deed to the appellees on behalf of appellants and the Stewart heirs. R. E. Tuck testified that the second agreement which he claims was entered into between him and M. J. Sharer in 1911 was reduced to writing, and that each of the parties retained a copy. He stated that his copy had been destroyed by fire. No copy of such a contract was found among Sharer's papers. He introduced a writing dated February 23, 1917, which reads: "This is to certify that I have this day agreed that R. E. Tuck take charge of the farm known as the Stewart farm, which I have had in charge since May, 1911, to pay judgment rendered in the Feby. Butler circuit court in favor of me. So I this day give him a clear receipt for all claims I hold against him. This 23rd day of February, 1917." The above was written with an ordinary lead pencil, and below this writing appear the names of R. E. Tuck, M. J. Sharer, A. B. Tuck, and J. R. Ragland, apparently signed with an indelible pencil. Appellant testified that Scott Page also signed this alleged receipt as a witness, but that his name appeared at the bottom of the page and had been eaten off by mice. Ragland and Page are dead. R. E. Tuck and A. B. Tuck, his brother, testified that this receipt was signed by M. J. Sharer on February 23, 1917, in the store at Sharer, Ky., which was operated by Sharer's son-in-law, Steve Easley. Appellees attacked this writing as a forgery.

The evidence tends to show that M. J. Sharer was not in his son-in-law's store at Sharer on February 23, 1917, but was visiting at his son's home in Morgantown, Ky. His son conducted a retail store in Morgantown and the ledger kept by him in the store was introduced which showed entries therein in M. J. Sharer's handwriting made on February 23, 1917, and on other days just prior and subsequent to that date. A number of witnesses testified that the signature purporting to be that of M. J.

Sharer was not his genuine signature. Other witnesses testified that in their opinion it was his signature. None of these witnesses, however, qualified as an expert in handwriting. Mr. J. E. Doolin, president of the Morgantown Deposit Bank, at which M. J. Sharer had done his banking business, testified that he knew Sharer's signature, and that he would not honor a check with a signature in the handwriting as it appeared on the alleged receipt. He made a test of the signature on the receipt which appeared to have been made with an indelible pencil, and as a result stated that an indelible pencil had not been used, but that the signature had been made apparently with the aid of carbon paper. While modern scientific methods were not employed to prove the fact in the matter at issue, numerous checks and other papers with the genuine signature of M. J. Sharer thereon were introduced and a comparison of these signatures with the one appearing on the alleged receipt convinces us that the chancellor correctly found that the signature in question is a forgery. Appellant R. E. Tuck introduced five checks given by him to M. J. Sharer in 1907 and 1909 and indorsed by Sharer, but the signature on only one of these checks bears a striking resemblance to the questioned signature. There is some proof that Sharer's signature twenty or twenty-five years before his death was somewhat similar to the signature appearing on the receipt. The facts strongly conduce to the belief that the questioned signature was traced from an old signature of Sharer. The four signatures appearing on the alleged receipt also have all the earmarks of having been made by one person. The preponderance of the evidence supports the chancellor's finding that the signature of M. J. Sharer on this receipt is not genuine.

The evidence for appellees showed that at the time the receipt is alleged to have been executed Hattie Tuck, daughter of R. E. Tuck and granddaughter of M. J. Sharer, and who was then twelve years old, was staying at Sharer's home. Sharer's wife had died and Mrs. Steve Easley, one of his daughters, was keeping house for him. Mrs. Easley had two small children, and it was inconvenient for Sharer to keep his granddaughter. He communicated with Tuck through his daughter and offered to give him the use of the land in question until Hattie Tuck was twenty-one years old, if he would take her and support her. Tuck accepted this offer, took his child in 1917, and also took possession of the land. In 1922,

Tuck, who had married again, built a three-room house on the land and moved into it with his wife. He also dug a well at a cost of $125, erected a small henhouse, and fenced a garden. He claimed that these improvements increased the value of the land $2,000, and in his answer and cross petition he asked that he be given a judgment for that amount in the event he was not adjudged the land. After all the proof had been taken, he offered to file an amended answer in which he alleged that he had erected improvements on the land and had cut a large amount of timber thereon with M. J. Shearer's knowledge and without any objection on his part, and he relied on these facts as an estoppel.

The rule which permits one who has made improvements on land in his possession to recover the amount by which such improvements have enhanced its vendible value applies only to a bona fide claimant of the land, and not to one like appellant who was not, as we have seen, a purchaser of the land, nor did he enter thereon under a claim of right, but only as a tenant for a fixed term. Loeb v. Conley, 160 Ky. 91, 169 S. W. 575, Ann. Cas. 1916B, 49; Combs v. Deaton, 199 Ky. 477, 251 S. W. 638. Furthermore, it is shown that substantially all, if not all, the material that went into the buildings was taken from the land, and appellant paid for digging the well with lumber that had been taken from the land. The mere fact that M. J. Sharer saw appellant cutting timber on the land and made no objection did not constitute an estoppel, since most of the timber was used in making improvements thereon.

The deed from the Stewart heirs to Tuck and the unexecuted deed from the Stewart heirs to Sharer were filed as exhibits. Both deeds disappeared while the record was in the files of the attorneys for the appellees. Tuck admits that he went to the office of these attorneys when they were not present, took the record from their files, and examined the deeds. He claimed that he left them with the record, but they were missing a few minutes after he left the office, and have never been found. The circumstances surrounding the disappearance of these exhibits did not tend to strengthen Tuck's version of how he came into possession of the land in 1917.

Judgment is affirmed.