# Kentucky River Coal Corporation v. Combs et al.

(Decided June 22, 1937.)

P. T. WHEELER for appellant.

C. W. NAPIER for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing in part and affirming in part.

Appellant filed its petition in the Perry circuit court on the 7th day of September, 1932, against Samantha Engle Combs and Wesley Combs, her husband,

alleging that it was the owner and in the possession of all the coal, oil, mineral, and mining rights and privileges in and upon a large tract of land set out and described in its petition containing 760.97 acres, together with all of the surface in said tract, except in nine small tracts set out, described, and referred to in said petition, which was excluded; that Samantha Engle Combs and Wesley Combs were claiming to be the owner of a small tract within said boundary under an alleged deed made to Samantha Engle Combs by her father, Albert Combs, and mother, Rachell Combs, bounded and described as follows:

"Beginning on a beech tree near the Abram rock on the bank of Troublesome Creek, thence with the meanders of Troublesome to public school property, thence with said school property to the County Road, thence with said road to the beginning."

Appellant alleges that it was entitled to a judgment declaring its title quieted to all of the land set out in its petition, including the land claimed by appellees; that the deed made to Samantha Engle Combs by her father and mother, as aforesaid, should be canceled and held for naught; that appellees be perpetually enjoined from entering upon its land, or interfering in any way with its possession and ownership. To this petition appellees filed answer and counterclaim traversing all of the allegations therein. By a second paragraph pleaded that Samantha Engle Combs was, herself, the owner of said tract of land and entitled to its use and possession; that her title was deducible from the record of the Commonwealth of Kentucky; that she became the owner by deed of conveyance from Albert Engle and Rachel Engle, of date January 3, 1913; that she has been in the possession of same continuously for more than seven, and fifteen years before the institution of the action, claiming it to a well-defined boundary as her own; that appellant had stood by and permitted her to sell a right of way for a public highway across said land; that by so doing he recognized her possession and title to said land; that appellant acquiesced in her right of possession and title and permitted her to erect upon the land valuable and lasting improvements worth the sum of $2,000, consisting of two dwelling houses and some other buildings, at no time objecting to her making said improvements; that the improvements had en-

hanced or increased the value of said property in the sum of $2,000, and should appellant be adjudged the owner of the land, that she recover the value of the improvements with a lien on the land to secure its payment. In reply appellant denied in toto her right of ownership or legal title from the records of the Commonwealth of Kentucky or at all, or her actual possession of same, or that she had been in the adverse possession of it for seven or fifteen years or any other time; or that it permitted appellees to claim, use, or occupy land, or to sell the right of way for a public highway to the Commonwealth of Kentucky for a public road, or that it had acquiesced in the defendants' possession, or in any way recognized her title or possession to same; or that it stood by or permitted her to erect valuable or lasting improvements thereon of the value of $2,000 or any other sum; or that she had placed improvements thereon with its knowledge or acquiescence; or that lasting or valuable improvements built by her upon said land had enhanced the value of said land at all. Appellant further pleaded that the deed claimed by appellee bore date of January 3, 1913; that when made to her there was then pending in the Perry circuit court a suit brought by the Tennis Coal Company, its vendor, against Albert and Rachel Engle, her father and mother, concerning the ownership and possession of the land in controversy, and at that time she was residing with them; that when said deed was made, if made at that time, was done so without a valuable consideration therefor, and was fraudulent and void and without notice or publication of same until after said action had been tried and judgment rendered; that said deed, if made at all, was kept a secret and "pigeon holed" and not recorded until the —— day of July, 1926. By that action the Tennis Coal Company was adjudged to be the owner of all the lands owned by Albert and Rachel Engle, her vendors, which included the tract of land now claimed by her. By that action Albert and Rachel Engle were restrained from molesting or interfering with said tract of land in any manner; that the alleged conveyance by Albert and Rachel Engle to Samantha Engle Combs was a fraud upon the rights of appellant, and should be canceled and held for naught. By an amended reply it pleaded that at the time the alleged deed was said to have been made to Samantha Engle Combs, this appellant was the owner

and in the actual possession· of the whole of the tract of land described in its petition, which included the land claimed by her, and was claiming it adversely to Albert and Rachel Engle and to the whole; that the deed made to her was champertous and void; that it or its vendor leased said land to Albert Engle, father of Samantha Engle Combs, and her brothers, William and Andy, with her knowledge, continued as tenants of appellant until December 31, 1928; that all of said tenants, brothers, father, and mother of Samantha Engle Combs, were fraudulently acting in concert with each other and with appellees, Samantha Engle Combs and Wesley Combs, to cheat, defraud, and take and convert the title of that part of plaintiff's boundary set out in their counterclaim for the use and benefit of appellees. They pleaded those facts as a complete bar and estoppel to appellees' claim either for the land or the value of the improvements.

On these issues the evidence was heard by the court. Judgment was rendered declaring appellant to be the owner of all the mineral in, upon, and under the tract of land described in its petition and all the surface, except the nine pieces or tracts excluded, as set forth in the petition. It was further adjudged that the deed from Albert and Rachel Engle to Samantha Engle Combs be canceled, set aside, and held for naught, and that appellant was the rightful owner and in the possession of the whole of said boundary except the surface rights of the nine tracts excluded in its petition; that appellees were estopped to set up or claim any part thereof; that Samantha Engle Combs, and her husband, Wesley Combs, were enjoined perpetually from entering upon said tract of land or from interfering therewith or attempting in any way to reduce any part thereof to their possession or to appropriate in any way its title to their use. To all of this judgment appellees objected and excepted. The court further adjudged that appellees recover of appellant for improvements $1,200, with a lien upon the land to secure its payment, and that said land be sold and a sufficiency thereof applied to its payment. To that part of the judgment appellant appeals. Appellees entered a motion for a cross-appeal against the judgment rendered against them, which was sustained, and now ask that the judgment be set aside and held for naught on their cross-appeal.

The question arises: To whom did the small boundary belong at the time of the institution of this action? The answer to that question will solve appellees' complaint on the cross-appeal. To do that, it is necessary that we give a short statement of the facts adduced by the record.

Appellant obtained its title by virtue of a conveyance made to it on the 14th day of September, 1916, by the Tennis Coal Company. That deed included the land now claimed by appellees. The Tennis Coal Company obtained title from W. B. Engle and his wife, Vina Engle, on November 20, 1903. At the time. the Tennis Coal Company sold the land to appellant, there was pending in the Perry circuit court an action in equity brought by the Tennis Coal Company against Rachel and Albert Engle, mother, father, and grantors to the land claimed by appellees. The purpose of that action was to remove the cloud from its title by reason of a claim made by Albert and Rachel Engle, which included the land in controversy. A judgment was rendered by the court and agreed to by Albert and Rachel Engle adjudging the Tennis Coal Company to be in possession and the owner of the entire tract of land consisting of 760.97 acres which included the land in controversy, and restraining them from interfering in any way with the title or possession of the Tennis Coal Company. Before that action, however, was fully settled, Albert Engle instituted a suit in the Perry circuit court against the Tennis Coal Company, wherein he claimed to be entitled to the possession of a portion of said tract included in the boundary, that the Tennis Coal Company had purchased from W. B. Engle, amounting to about 50 acres, and in that suit Albert Engle claimed to be the owner and in possession thereof, and asked that his title be quieted. This 50 acres, Albert Engle claimed to have purchased from his brother, Thomas Engle. This action was decided in the Perry circuit court in his favor, but on appeal to this court the judgment was reversed. Tennis Coal Co. v. Engle, 123 S. W. 1193, 1194.

In that opinion, we said:

"It will thus be seen that, when Thomas Engle attempted to convey the land to Albert Engle in April 1901, he had no title to it, as he had been divested of his title by the sheriff's deed made in

1899. We do not attach any importance to the paper called a title bond made by Thomas Engle to Albert Engle in April, 1899. It was not in any particular sufficient to pass title to any land, and may be treated as if it had never been made. That Thomas Engle, the alleged grantor in the title bond, did not consider it as divesting him of title is made plain by the fact that in 1900 he brought a suit against W. B. Engle for the purpose of having set aside the sale of the land made under the execution against him.

"It is also very clearly established that when the survey of the land purchased from W. B. Engle was made by the company, a short time previous to the execution of the deed to it by W. B. Engle, the surveyors included the land in controversy in the W. B. Engle survey, and that Albert Engle was present a good part of the time, and knew where the lines of the survey were being run and that they embraced the land in controversy, and that he did not then set up any title to it.

"There is a large amount of evidence in the record, much of it contradictory as well as irrelevant, but the conclusion that Albert Engle is not the owner of the land claimed by him may safely be rested upon the deed made by the sheriff to W. B. Engle in 1899, the deed by W. B. Engle to the appellant company in 1903, and the fact that Albert Engle by his lease in 1904 recognized that the company was the owner of the land now claimed by him. And the further fact that he was present when the boundary lines of the W. B. Engle tract were being surveyed and must have known, as he lived in the immediate neighborhood, that it embraced the land leased by him and that he is now asserting title to it. It is true that Albert Engle testifies he did not understand that the survey included this land, or that the lease convered it, but the weight of the evidence is against him on both propositions, as well as upon the point that mistake or fraud entered into the execution of the lease.

"The judgment of the lower court is reversed, with directions to dismiss the petition."

That judgment is now in full force and effect and

has never in any way been modified. It occurs to us that the adjudication, as set out in the case, supra, settles the question as to the title at that time at least to the land in controversy being in the Tennis Coal Company and not in Albert Engle.

Appellee Samantha Engle Combs claims that she obtained title to the land in controversy from her father and mother, Albert and Rachel Engle. She admits that the deed was made to her when she was an infant, nine years old, when residing with her father and mother; that the consideration stated in the deed was $50; that no part of it was paid; that it was merely a gift; that her deed was not recorded until the year 1926. The proof shows that Albert Engle, her father, after this appellant had become the owner of the 760.97 acres of land, including the land claimed by appellee, occupied it as its tenant; that at the time the deed made to his daughter was recorded, he was occupying the land as tenant; that he had no title and, therefore, was unable to convey to his daughter a title to same or to convey any greater interest in said land than he had himself.

The evidence is conclusive that the deed to Samantha Engle Combs, made on January 3, 1913, did not and could not pass the title to her because at that time Albert and Rachel Engle had no title to convey. His conveyance was fraudulent and void. When said deed was made known and recorded on the 16th day of July, 1926, this tract, the boundary of which included the disputed land, was leased to Albert Engle. The proof is conclusive to our mind that appellant by virtue of its deed from the Tennis Coal Company was the owner of all land included in the boundary set out in its deed for the full 760.97 acres, and that said boundary included the land in controversy. However, the evidence on that question is contradictory and in conflict in many instances, but the judgment of the trial court as to the evidence on a disputed question, as in the instant case, is accepted by this court, unless upon the whole record the mind of the court is left in doubt to such an extent that that doubt impresses the court that the judgment is wrong. We have no such doubt. We are of the opinion that no error was committeed by the trial court in adjudging the land to belong to appellant.

The next question is: Did the court commit an error

in adjudging that appellees recover $1,200, by reason of the improvements placed upon the land by her after she took possession of it. The proof is to the effect that she did not take possession of the land until in the year 1928. Up to that time it had been leased to others, and as she states, controlled by her father, Albert Engle; that he had leased it to different parties at different times; that she married in 1920 and left the home of her father and lived at other places, and not on this land; that she and her husband moved on the land for the first time in that year, doing so with full knowledge that her father and brothers were occupying the land as tenants of appellant. When she moved upon it she obtained notice through her husband that her title to the land was in question. Her husband at that time, with her knowledge, was in the act of doing some building on the place. He was notified that he was beginning the erection of a building on land belonging to appellant and he announced: "I don't reckon I will stop." She admits in her testimony that she obtained that information from him. However, with that knowledge, she continued to build a residence and other buildings upon the land. It is in evidence that the buildings that she did erect were composed of very cheap material; in fact, were of very little value to the property. However, we do not think that the value of the improvements affects the question involved.

At the time the deed was made to appellee by her father, he was a tenant of appellant or its grantor. It is a well-established rule of law that when a tenant or lessee conveys land to a third party, the third party becomes a subtenant and is bound by the terms of the lease of the original tenant. Her possession of the land can rise no higher than that of her father.

In Fordson Coal Co. v. Wells, 245 Ky. 291, 53 S. W. (2d) 564, 567, the court said:

"When this deed was made by Davis to James Wells, Davis was in possession of the premises described and claimed by the Fordson Coal Company, under a lease from the Kentucky Coal Lands Company, one of the vendors of the Fordson Coal Company; hence all Davis could convey was his tenancy. See section 2291, Ky. Stats. When a man enters under a tenant, he becomes tenant, that is all. A stream can rise no higher than its source."

Applying that principle of law to this case, the

claim of appellees for improvements should not be allowed, because when the improvements were made, she had knowledge that her title to the land was not good and that her rights could be no greater than that of her father, who had no rights in the land greater than that of a tenant. Thus when making the improvements they did so without any accountability on the part of appellant.

In the case of Tuck et al. v. Sharer et al., 234 Ky. 296, 28 S. W. (2d) 22, 24, the court said:

"The rule which permits one who has made improvements on land in his possession to recover the amount by which such improvements have inhanced its vendible value applies only to a bona fide claimant of the land, and not to one like appellant who was not, as we have seen, a purchaser of the land, nor did he enter thereon under a claim of right, but only as a tenant for a fixed term."

In the case of Loeb v. Conley, 160 Ky. 91, 169 S. W. 575, 581, Ann. Cas. 1916B, 49, the court said:

"If, however, the improvements are not made by a person while acting in the good-faith belief that he is the owner of the land, or if they are made with actual notice of an adverse superior claim, and especially after this adverse claim has been asserted in a suit, the person making the improvements will not be entitled to compensation."

In the same case, supra, the court said:

"It is further said that, to entitle one claiming for improvements to recover: 'It is not enough, that the possessor shows himself to have meliorated the land, but his money and labor must be bestowed under an honest conviction of his being the rightful owner of the land. For if he takes possession without title, and knowing the land belongs to another, he is himself guilty of a wrong, and although he may have expended his money and bestowed his labor, his claim for compensation ought not to be sanctioned by a court of equity.'

"In Harrison v. Fleming, 7 T. B. Mon. 537, and again in Harrison v. Baker, 5 Litt. 250, it was held that where persons make improvements with actual knowledge of the assertion of an adverse claim to the land, they cannot recover for the im-

provement. To the same effect are Singleton v. Jackson, 2 Litt. 208, and Wade v. Keown, 78 S. W. 900, 25 Ky. Law Rep. 1787.''

Applying these principles to the instant case, we are unable to reach any other conclusion than that the court was in error in allowing appellees the sum of $1,200, their claim for the improvements erected on the place secured by a lien on the land. Whatever rights that they had to the land came to them by reason of the deed made to Samantha Engle Combs by her father, who had at the time no title to the land, but was occupying same as a tenant to appellant, which fact was known to appellees, as shown by the evidence. Thus, we have concluded, after a careful consideration of the entire record, that the case should be reversed on the appeal and affirmed on the cross-appeal.