RENDERED:  AUGUST 16, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0654-MR

CHARLES GREGORY RICE                           APPELLANT

               APPEAL FROM TAYLOR CIRCUIT COURT
v.               HONORABLE KAELIN G. REED, JUDGE
               ACTION NO. 20-CI-00238

JIM CHRISTIE AND LORIA
CHRISTIE                                    APPELLEES

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  COMBS, GOODWINE, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Appellant, Gregory Rice ("Mr. Rice"), appeals from a judgment of the Taylor Circuit Court which awarded $100,000.00 in damages to the Appellees, Jim and Loria Christie ("the Christies") for improvements they made to a rental property owned by Mr. Rice.  He also appeals from the circuit court's order dismissing his counterclaim for unpaid rent.  After careful review of the law and the briefs, we affirm in part, reverse in part, and remand.

## I.     BACKGROUND

The Christies began renting a house on a parcel of land owned by Mr. Rice and his now ex-wife, Mary Anne Rice ("Ms. Rice"), in July 2013.  The parties entered into an oral lease agreement, the initial terms being that the Christies would pay $1,000.00 per month for rent.  The parties soon began discussing the prospect of the Christies purchasing the home.  The Christies allege that under the oral agreement, Mr. Rice would sell the home for $185,000.00 and the Christies would receive a $24,000.00 credit for monies paid towards rent. There was conflicting testimony as to whether Mr. Rice ever presented a written agreement with an option to buy the property to the Christies, how many written lease agreements were presented, and the proposed timeframe of any agreement. However, it is undisputed by all parties that no written agreement was entered.

Soon after moving into the home, the Christies began making improvements.  The improvements over the next eight years included installation of an above ground pool and deck, replacement of some windows, replacement of garage door, work done to the ceilings of the home, sewage repairs, renovation of the den, renovation of a bathroom, installation of some new flooring, installation of new cabinets, painting, framework in the basement, installation of new doors, and installation of new light fixtures.

During their first years of renting the property, they fell behind on rent. At trial, the Christies admitted they accumulated arrears of $2,000.00, though Mr. Rice testified that they had fallen behind at least $8,000.00. Mr. Rice claimed that he presented a letter to Mr. Christie asking for the past due amounts to be brought current immediately in early 2015. While the letter he produced at trial appears to have been signed by Mr. Rice, Mr. Christie, and Ms. Rice, it was not notarized and both Mr. Christie and Ms. Rice denied ever seeing the letter. Regardless, it is uncontested that the Christies began making additional rent payments to Mr. Rice which lasted at least into 2017. Ultimately, Mr. Rice requested damages of $2,000.00 in rent still unpaid at the time of the trial.

In August 2018, Ms. Rice filed for divorce. Mr. Rice testified that he told the Christies not to make any more improvements to the property and that he could not sell the home until the divorce was finalized or possibly at all. However, the Christies continued to make improvements and claimed Mr. Rice allowed them to do so.[1] Mr. Rice admitted to permitting the Christies to do some work on the ceilings of the home despite his admonition but denied acquiescing to any other improvements.

---

[1] Specifically, the Christies testified that Mr. Rice did not prohibit them from installing the pool and building a deck for it as well as assented to some work done to the ceilings. The Christies also acknowledged Mr. Rice provided rent credits for some other repairs, including the replacement of some windows and the garage door.

The Rices were divorced in October 2019, and Mr. Rice received a quitclaim deed from Ms. Rice for the property soon thereafter. The parties continued discussing the sale of the home, and the Christies continued to make improvements. Eventually, Mr. Rice commissioned a land surveyor to partition a tract of land for the house. During this process the parties disagreed about a right-of-way through the contemplated tract of land and eventually all talks to purchase the home fell through. The Christies filed the underlying complaint on September 16, 2020.

Initially, the Christies claimed a breach of contract. They further requested specific performance of the sale of the home pursuant to the parties' oral agreement under the theory of estoppel; alternatively, they requested recompense for the improvements they made to the home under the theory of unjust enrichment. Mr. Rice filed a counterclaim for unpaid rent and late fees in the amount of $23,450.00. Later the circuit court, applying the statute of frauds as set forth in Kentucky Revised Statutes (KRS) 371.010, entered a partial summary judgment denying the Christies' request for specific performance, as there was never a written agreement to sell the property, nor an executed written option.

During the course of litigation, the Christies employed an appraiser who completed a report and determined the property to have a fair market value of

$300,000.00 as of June 2021. The report included a list of all the improvements Mr. Christie claimed to have made but did not ascribe any specific value to them.

Eventually in March 2023, the matter was presented to an advisory jury pursuant to Kentucky Rules of Civil Procedure (CR) 39.03. The jury rendered an advisory verdict in favor of the Christies on their claim and awarded $100,000.00 in total damages. The jury also denied Mr. Rice's counterclaim for payment of unpaid rent. The circuit court prepared specific findings of fact and conclusions of law in light of CR 39.03 and CR 52.01, in which it issued a judgment that matched the advisory jury's verdict. It also accepted the jury's verdict regarding Mr. Rice's counterclaim.

Mr. Rice subsequently filed a post-judgment motion to alter, amend, or vacate, request for a new trial, and for additional findings. The circuit court denied the motion, and this appeal followed.

## II.    STANDARD OF REVIEW

Because the empaneled jury only served in an advisory role regarding the Christies' claim of equity, the circuit court was required to make its own factual findings. CR 52.01; *Emerson v. Emerson*, 709 S.W.2d 853, 855 (Ky. App. 1986). Findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01; *see also Lawson v. Loid*, 896 S.W.2d 1, 3 (Ky. 1995).

A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998).

For questions concerning the admissibility or exclusion of evidence, our standard of review is whether the circuit court abused its discretion, and the test for such an abuse is whether circuit court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Porter v. Allen*, 611 S.W.3d 290, 294 (Ky. App. 2020) (internal quotation marks and citations omitted).

## III.    ANALYSIS

The right to recover for improvements made on another's land sounds in equity and may be based on the doctrines of unjust enrichment or estoppel. *See Jones v. Sparks*, 297 S.W.3d 73, 76 (Ky. App. 2009). To recover under the theory of unjust enrichment, a party "must prove three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [that] benefit without payment for its value." *Id*. at 78 (citations omitted). The party seeking recovery for having made improvements to real property must also show he or she was acting in good faith. *Mullins v. Mullins*, 797 S.W.2d 491, 493 (Ky. App. 1990) (citing *Stepp v. Leslie*, 263 S.W.2d 122 (Ky. 1953)). In these instances, acting in good faith includes the party seeking to recover having a good faith belief that they held title to the

-6-

property upon which they made improvements. *Id.* (citing *Anglin v. Pennington*, 296 Ky. 142, 176 S.W.2d 277 (1943)); *see also Rose v. Holbrook*, 287 S.W.2d 914, 916 (Ky. 1956).

At trial, the Christies introduced receipts of $26,489.38 in improvements they made to the property, though Mr. Christie testified that there were also some other improvements which were paid in cash and no receipts existed. They argued Mr. Rice would be unjustly enriched if he were to retain the benefit of these improvements and that the value of the benefit was the difference between the originally agreed value of the home ($185,000.00) and the appraised value of $300,000.00. Specifically, the circuit court found in accepting the advisory jury's verdict:

> The evidence shows that the Christies' improvements caused the value of the property to increase. The parties agreed at some point around July 2013 that the fair market value of the home was $185,000 as this is the price at which the Christies were willing to buy, and Rice was willing to sell, the home. Jerry Mardis valued the home at $300,000 in June 2021. The Court will accept the verdict of the advisory jury and finds that the improvements made by the Christies have increased the value of the Misty Drive property by $100,000. The jury could have inferred from the evidence that some of the increase in value from 2013 to 2021 to natural market forces as there was testimony that the housing market was trending upward beginning in 2021 into 2022. Furthermore, Mardis did not conduct a specific analysis regarding the value added to the home by the improvements; he simply determined the market value of the home on or about June 22, 2021.

On appeal, Mr. Rice does not dispute that the Christies made some improvements to the property. Instead, he argues that he did not approve of most of the improvements; it is doubtful whether the improvements increased the value of the property to the extent of $100,000.00; and the Christies' claim of equity fails because they did not have a good faith belief in holding title. We agree. It is clear from the Christies' own testimony that they did not have a good faith belief in holding title to the realty as they: (1) acknowledged that Mr. Rice paid all property taxes and insurance on the property for the entirety of their tenancy; (2) did not dispute that Mr. Rice continued to pay for and facilitated some repairs during the Christies' tenancy; and (3) accepted some rent credits offered by Mr. Rice for some other repairs the Christies made and paid for themselves.

Instead of following *Mullins*, *supra*, the circuit court distinguished it, finding the Christies had reasonably expected to acquire the property in the future based on the oral option to purchase. It further compared the case at hand to an extra-jurisdictional case in which the Idaho Supreme Court found unjust enrichment and awarded recompense for a tenant's improvements made to real property in anticipation of the fulfilment of an oral rent-to-own agreement. *Asher v. McMillan*, 503 P.3d 172 (Idaho 2021).

Our holding in *Mullins* relies upon the precedent of Kentucky's highest court as laid out in the cases of *Anglin v. Pennington*, 296 Ky. 142, 176

S.W.2d 277 (1943), and *Stepp v. Leslie*, 263 S.W.2d 122 (Ky. 1953). We are bound to apply this precedent under Kentucky Rules of the Supreme Court (SCR) 1.030(8)(a) ("The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court."). In fact, there are ample cases decided, even before *Stepp* and *Anglin*, similarly holding that only those acting in a good faith belief that they are owners of the land may be entitled to compensation for improvements made during their tenancy of the land. *See, e.g.*, *Kentucky River Coal Corp. v. Combs*, 269 Ky. 365, 107 S.W.2d 241, 244-45 (1937) (discussing *Loeb v. Conley*, 160 Ky. 91, 169 S.W. 575, 581 (1914) ("If, however, the improvements are not made by a person while acting in the good[]faith belief that he is the owner of the land, or if they are made with actual notice of an adverse superior claim, and especially after this adverse claim has been asserted in a suit, the person making the improvements will not be entitled to compensation."); and *Tuck v. Sharer*, 234 Ky. 296, 28 S.W.2d 22, 24 (1930) ("The rule which permits one who has made improvements on land in his possession to recover the amount by which such improvements have enhanced its vendible value applies only to a bona fide claimant of the land, and not to one like appellant who was not, as we have seen, a purchaser of the land, nor did he enter thereon under a claim of right, but only as a tenant for a fixed term.").

Applying Kentucky precedent to the case *sub judice*, there is a dearth of substantial evidence which would allow the Christies to succeed on their claim of equity under any theory.[2] While some of Mr. Rice's conduct vis-à-vis the Christies may have been ambiguous, at most, the evidence shows the Christies relied upon the hopeful wish that Mr. Rice expressed about selling the home and the otherwise unenforceable oral option to buy which was appropriately barred by the statute of frauds. KRS 371.010.

By adopting the advisory jury's verdict awarding $100,000.00, the circuit court essentially side-stepped the statute of frauds and enforced the otherwise unenforceable oral option to buy, as $115,000.00 would be the entirety

---

[2] While the Christies mentioned the theory of estoppel in their initial complaint, they have abandoned any application of it along with their requested relief of specific performance. The Christies did not raise the argument during the trial below, nor in their brief. However, the circuit court mentions equitable estoppel in its judgment, which is why we are compelled to note the issue.

> The essential elements of equitable estoppel are:
>
> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.

*Smith v. Howard*, 407 S.W.2d 139, 143 (Ky. 1966) (citations omitted).

In this case, there has not been a finding of false representation or concealment, nor does there exist sufficient evidence from which we can conclude Mr. Rice's conduct rose to the level of being considered perpetration of fraud, intentional deceit, or otherwise "evil." *See Smith v. Ash*, 448 S.W.2d 51, 53 (Ky. 1969); *see also Mullins*, 797 S.W.2d at 493.

of the difference in equity if Mr. Rice had sold the home to the Christies in 2021. The circuit court awarded $100,000.00 in damages despite the Christies only providing evidence of approximately $26,000.00 in improvements and despite no amount being specifically attributed to the improvements themselves in the 2021 appraisal. In its Findings of Fact, Conclusions of Law, and Judgment the circuit court merely explained the discrepancy by noting that the jury "could have inferred" that "some" of the increase in value was attributable to natural appreciation.

"The statute of frauds does not lend itself to the issue of whether there is or is not a contract in existence. Its design and purpose is to prevent the enforcement of a contract unless, by reason of some exception, the statute of frauds would be found not applicable." *Bennett v. Horton*, 592 S.W.2d 460, 463 (Ky. 1979) (citing *Purcell v. Campbell*, 261 Ky. 644, 88 S.W.2d 670 (1935)). "[W]here the statute of frauds is clear and unambiguous, as is the case here, equitable relief should only be granted under the most limited of circumstances, lest the Court run afoul of judicially amending the statute in violation of separation of powers." *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 10 (Ky. 2005) (citing *C.G. Campbell & Son, Inc. v. Comdeq Corp.*, 586 S.W.2d 40 (Ky. App. 1979)). Thus, the circuit court herein erred by essentially enforcing the purported "oral option to buy."

The remaining item to address is whether the circuit court erred in not allowing Mr. Rice to submit his rental logs as evidence regarding his counterclaim for unpaid rent. On that issue we find no abuse of discretion.

The introduction of business records is permissible as an exception to the general prohibition against hearsay evidence unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. Kentucky Rules of Evidence (KRE) 803(6). "[W]here the purported declarant of a statement contained in a business record testifies contrary to the statement contained in the record itself, the trustworthiness of the record has been called into question and the trial court would not be abusing its discretion in excluding the record from the evidence should the situation so warrant." *Welsh v. Galen of Virginia, Inc.*, 128 S.W.3d 41, 52 (Ky. App. 2001); *see also Augenstein v. Deutsche Bank Nat'l Tr. Co. as Tr. for Certificateholders of Soundview Home Loan Tr. 2005-OPT4, Asset-Backed Certificates, Series 2005-OPT4*, 647 S.W.3d 857, 862 (Ky. App. 2021).

Mr. Rice initially asked for $23,450.00 for past due rent and late fees but did not delineate how much was for rent. During a deposition in 2021, Mr. Rice testified that he believed the Christies still owed $2,000.00 in unpaid rent. However, on the first day of trial Mr. Rice contradicted that testimony, stating he was mistaken and believed the Christies still owed $6,000.00 based on rental logs

-12-

he had created.  During the second day of trial, Mr. Rice attempted to introduce his rental logs as an exhibit, but the Christies objected, arguing the logs contained extraneous material concerning late fees and other expenses in addition to payments, were self-serving, and were not best evidence.  The circuit court reserved the objection and allowed Mr. Rice to testify at length about the rental log and permitted him to read figures and dates from it.  Mr. Rice further testified the Christies still owed at least $2,000.00, though he believed it was more, and that he would be fine only requesting $2,000.00.  After Mr. Rice's testimony on the subject, the circuit court sustained the objection and excluded the log.

Considering Mr. Rice's conflicting testimony and the circumstances, we cannot hold that the circuit court abused its discretion prohibiting the introduction of the rental logs.  Furthermore, allowing Mr. Rice to testify about them further diminished any possible prejudice in their exclusion.  *See Mun. Paving Co. v. Farmer*, 255 S.W.2d 618, 620-21 (Ky. 1953).

IV.    CONCLUSION

Accordingly, we reverse the circuit court's judgment concerning the Christies' claim of equity and remand with instructions to dismiss.  Furthermore, finding no abuse of discretion in the circuit court's exclusion of Mr. Rice's rental logs, we affirm the jury's verdict regarding Mr. Rice's counterclaim for unpaid rent.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Elmer J. George
Jonathan R. Spalding
Lebanon, Kentucky

BRIEF FOR APPELLEE:

Joseph R. Stewart
Lebanon, Kentucky